**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**3:09cv363**

| | |
|---|---|
| **RHONDA KING SCOTT,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| Vs. ) | **MEMORANDUM OF** |
| ) | **DECISION AND ORDER** |
| **UNITED AUTO CREDIT** ) | |
| **CORPORATION,** ) | |
| ) | |
| **Defendant.** ) | |
| _____ ) | |

**THIS MATTER** is before the court on defendant's Motion for Summary Judgment (#19). Having carefully considered the pleadings, the oral and written arguments of counsel, as well as the evidentiary material submitted, the court enters the following findings, conclusions, and Order granting the Motion for Summary Judgment.

**FINDINGS AND CONCLUSIONS**

**I.    Procedural Background**

This is a Title VII action in which plaintiff contends that defendant denied her two promotions, laid her off, and retaliated against her based on her race, African-American. Plaintiff has also asserted a number of supplemental state law claims. Rather than argue the merits of her state-law claims, plaintiff stated in her response that she had withdrawn those claims. While plaintiff did not evince such withdrawal by filing a stipulation of dismissal of those claims signed by defendant's counsel, see Fed.R.Civ.P. 41, the court made inquiry at the hearing and counsel confirmed that plaintiff has abandoned her prosecution of those claims. The court will dismiss those claims with prejudice as plaintiff has had an opportunity to fully litigate those claims in this action and has declined to further prosecute such claims after summary judgment was sought by defendant.

In responding to the Motion for Summary Judgment on her Title VII claims, plaintiff has also presented evidence that is not admissible. Such evidence will be discussed in advance of discussing the factual background of the case inasmuch as defendant has moved to strike such evidence.

First, plaintiff has submitted the affidavit of Gwendolyn Taylor, who she (1) failed to disclose as a potential witness in any initial disclosures under Rule 26 and (2) failed to identify in response to defendant's interrogatory asking her to identify potential witnesses. Rule 26(a)(1)(A)(i) requires all parties to disclose

> the name and, if known, the address and telephone number of each individual likely to have discoverable information--along with the subjects of that information--that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment . . . .

Fed.R.Civ.P. 26(a)(1)(A)(i). In turn, Rule 37(c) provides that when a party fails to disclose potential witnesses as required by Rule 26(a) "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed.R.Civ.P. 37(c)(1). Plaintiff has provided the court with no reasons that would excuse her failure to disclose the witness or names such witness in response to defendant's interrogatory. Further, it appears that allowing such testimony despite two opportunities to disclose the witness before the conclusion of discovery would unduly prejudice the defendant. Finally, it appears that plaintiff was on notice since at least eleven months prior to this litigation (i.e., during the administrative process before the EEOC) that defendant's promotional policies would be cited by defendant as one of its legitimate, non-discriminatory reasons for not promoting plaintiff. The court will exclude the Taylor affidavit.

Second, plaintiff, has submitted her own affidavit to counter defendant's motion for

summary judgment, which cites plaintiff's earlier deposition testimony that is unsupportive of her claims. Such affidavit directly contradicts her prior deposition testimony. The Court of Appeals for the Fourth Circuit has clearly held that such an affidavit cannot be considered:

> [w]hile Coates asserts in his affidavit opposing summary judgment that he was denied freedom of movement during his interview with UPS investigators, this contradicts his prior deposition testimony. The district court properly held that such a contradiction cannot create a genuine issue of material fact.

Davis v. United Parcel Service, 1997 WL 702278, *2 (4th Cir. Nov. 5, 1997)(citation omitted).[1] Indeed, the Court of Appeals for the Fourth Circuit has long held that a party cannot create a genuine issue of material fact by submitting a version of events that competes with their own earlier testimony:

> If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact. A genuine issue of material fact is not created where the only issue of fact is to determine which of the two conflicting versions of the plaintiff's testimony is correct.

Barwick v. Celotex Corp., 736 F.2d 946, 960 (4th Cir. 1984) (citations and corresponding quotation marks omitted). Thus, the court will not consider plaintiff's affidavit insofar as it contradicts her prior testimony.

## II. Factual Background

### A. Overview

The court has reviewed all the admissible evidence and has resolved all properly disputed evidence in a manner favorable to plaintiff. Plaintiff worked in an entry level administrative position for defendant, a sub-prime auto lender, at its Charlotte, North

---

[1] Due to the limits of Electronic Case Filing, a copy of such unpublished decision is placed in the electronic docket through incorporation of the Westlaw citation.

Carolina, branch office on the cusp of the financial crisis in 2007. It is undisputed that plaintiff was among 16 employees of different races at many branches who was laid off in August 2008. It is undisputed that such layoff was attributed to the downturn in the economy and that the Charlotte branch was eventually closed. Despite being included in a reduction in force, plaintiff claims that she was included in the reduction in force because she had participated in protected activity at or about the time the reduction in force was announced.

In addition to claiming that her layoff was either racially motivated or was in retaliation for protected activity, plaintiff also claims that her race played a role in her not receiving two separate promotions during the first year of her employment with defendant. Defendant has come forward with evidence, however, that it had a policy in place that no employee would be promoted during their first year of employment and that plaintiff was not as or more qualified than the successful candidate, who already held the same position at another branch.

### B. Undisputed Facts

Defendant is a nationwide company that specializes in the financing of sub-prime automobile loans. Aff. of Robert Hart, ¶ 2. Plaintiff was employed by defendant as an at-will employee from May 29, 2007, through August 15, 2008, at a branch office located in Charlotte, North Carolina. Id., , ¶ 2 Robert Hart (hereinafter "Hart") was the Branch Manager of the location where plaintiff worked. He interviewed plaintiff for the position of Administrative Coordinator I, recommended her for that position, and was her supervisor once she became employed in that capacity by defendant. Id., at ¶¶ 2-3.

In December 2007, eight months after she started working for defendant, an "Administrative Supervisor" position became available at the branch where plaintiff worked. Id., at 4. It is undisputed that the Administrative Supervisor position paid slightly higher than

the Administrative Coordinator I position plaintiff then held and that such position carried with it more responsibility, including some supervisory/managerial duties. Plaintiff admits that she had no experience supervising anyone. Deposition of Rhonda King Scott, p. 42. Defendant's national corporate management, however, made the decision to award the Administrative Supervisor position to Charity Hedgepath ("Hedgepath") in January 2008, Hart Aff., ¶ 4, who already held such position in a nearby branch office and actually had supervisory experience.

In mid-January 2008, Hart met with the plaintiff and told her that the Administrative Supervisor position was being awarded to Hedgepath at the direction of corporate management. Id., ¶ 6. Defendant has also proffered a written policy pursuant to which employees in the position of Administrative Coordinator I, such as the plaintiff, were not eligible for promotion unless they had been with the company for over a year.[2] In January 2008 when the position was awarded to Hedgepath, plaintiff had been employed with defendant for nine months.[3] Defendant's Memorandum in Support, Ex. 3 *UACC's Promotional Guidelines*; Plaintiff's Depo., pp. 92-93; Hart Aff., ¶ 5; Affidavit of David Carlton, ¶ 4. Hedgepath already had experience in the Administrative Supervisor position at defendant's Hickory branch, which had been recently downsized, Hart Aff., ¶ 5, Defendant's Exhibit 1, ¶ 5, while plaintiff had no such experience. Plaintiff's Depo., pp. 92-93.

It is also undisputed that the economic downturn also impacted other branches of

---

[2] The excluded Taylor affidavit would call into question not the existence of such policy, but the consistency with which such policy was enforced.

[3] Even if such Affidavit were allowed, such affidavit would call into question whether plaintiff was not promoted based on such policy; it would not, however, counter defendant's other affirmative showing that it hired or laterally transferred into such position a person who was better qualified.

defendant's operations nationwide. Carlton Aff., ¶ 5. Dozens of branches were closed and hundreds of employees were laid off. Id. The Charlotte branch where plaintiff worked was closed as a result of this company-wide reduction in force by February/March 2010. Hart Aff., ¶ 15; Carlton Aff., ¶ 12.

Three months after not receiving the first promotion, plaintiff received her first annual performance review on April 1, 2008, by Patrick Conroy, an assistant branch manager. Hart Aff., ¶ 8; Defendant's Memorandum in Support, Ex. 5 *Annual Performance Review*. On a scale of one-to-five, plaintiff received a satisfactory grade of three for some of her job duties; however, there were a number of areas where she was told she needed improvement. Defendant's Ex. 5.

Plaintiff also contends that her race played a part in defendant's decision not to promote her to another supervisory position that was open but never filled: an "Administrative Coordinator II" position. During the Spring of 2008, plaintiff indicated to Hart that she wanted to be considered for a promotion to that position. Hart Aff., ¶ 9. At that time, that position was unfilled. Id., ¶ 9. In mid-summer of 2008, and in response to a question from her, Hart informed plaintiff that she had not been promoted to the Administrative Coordinator II position for several reasons. Id., ¶ 10). First, it is undisputed that the Charlotte branch was not allowed by the company to fill that position and no one at that branch had ever held that position. Id. Second, even if the position was available to be filled, Hart did not believe she was ready for that position because her work performance was only average and he had concerns about her working relationships with some of the other employees. Id. He explained that his concerns about her working relationships were based in part on feedback that he had received from a former coworker and others who said that plaintiff was confrontational, argumentative, and did not take instruction well. Id. Third, at

the time the Charlotte branch was considering creating the position of Administrative Coordinator II in March or April 2008, plaintiff still had not been with the company for over a year and thus was not eligible for a promotion per company policy. Id., ¶ 10; Carlton Aff., ¶ 4.

On August 15, 2008, Hart and Mike Fisher, an Assistant Vice President and Division Manager of defendant, acting pursuant to the directions of David Carlton ("Carlton"), a Senior Vice President of defendant, informed plaintiff that she was being laid off due to the reduction in force taking place throughout the company's various facilities. Hart Aff., ¶ 12. Plaintiff's position was eliminated and no one was hired to replace her. Id., ¶ 13.

As plaintiff claims that her termination was in retaliation for participation in protected activity, the court has, below, resolved the timing of certain events in a manner most favorable to plaintiff for purposes of considering the instant motion. It is undisputed that Carlton made the decision to lay off the plaintiff on or about August 11, 2008, Carlton Aff., ¶ 7, his office was in Evergreen, Colorado, and he sent an email on August 13, 2008, at 7:12 a.m. Mountain Time, with an accompanying attachment, directing that plaintiff, along with 16 other people in the Administrative Coordinator I position from multiple branches, be laid off. Id.; Memorandum in Support, Ex. 6 *Email and Accompanying Attachment*. Thus, Carlton's email was sent on August 13, 2008, at 9:12 a.m. (Charlotte time). Carlton Aff., ¶ 7. Between 9 a.m. but before 10 a.m. that same day, plaintiff reported for the first time to defendant's human resources department her perception of racial discrimination in failing to promote her to the Administrative Supervisor and Administrative Coordinator II positions. Carlton Aff., ¶ 8; Plaintiff's Depo., pp. 161-68.

While there is a dispute as to whether plaintiff complained of racial bias before or after the notice of the reduction in force was received in Charlotte, the court will resolve this

issue in plaintiff's favor and consider that plaintiff communicated her concerns of racial bias immediately before the email was received in Charlotte. Even with that assumption, plaintiff has not presented any evidence to show how her August 13 complaint impacted defendant's August 11 decision to include her in the layoff. Reading plaintiff's Complaint and arguments in a light most favorable to her, she appears to contend that her name was added to the list that morning in retaliation for making such complaint earlier in the day. Plaintiff has presented no evidence that would support such theory or belief. Instead, the undisputed evidence is that Carlton was unaware of plaintiff's August 13 racial bias claims when he made the August 11 decision to include plaintiff in the layoff. Further, there is no evidence that he knew of such complain at the time he sent the email directing her termination. Carlton Aff., ¶¶ 8-10.

## III. Discussion

### A. Summary Judgment Standard

Defendant has moved for summary judgment contending that there are no genuine issues of fact remaining for trial and that it is entitled to entry of judgment in its favor as a matter of law. Rule 56(a), Federal Rules of Civil Procedure, provides:

> A party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

Fed.R.Civ.P. 56(a). The rule goes on to provide procedures for plaintiff to use in responding to a Motion for Summary Judgment:

> **(c) Procedures.**
> **(1) Supporting Factual Positions.** A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> **(2) Objection That a Fact Is Not Supported by Admissible Evidence.** A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
>
> **(3) Materials Not Cited.** The court need consider only the cited materials, but it may consider other materials in the record.
>
> **(4) Affidavits or Declarations.** An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed.R.Civ.P. 56(c).

On a motion for summary judgment, the moving party has the burden of production to show that there are no genuine issues for trial. Upon the moving party's meeting that burden, the non-moving party has the burden of persuasion to establish that there is a genuine issue for trial.

> When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. In the language of the Rule, the nonmoving [sic] party must come forward with "specific facts showing that there is a *genuine issue for trial*." Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no "genuine issue for trial."

Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted; emphasis in the original) (quoting Fed. R. Civ. P. 56). There must be more than just a factual dispute; the fact in question must be material and readily identifiable

by the substantive law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).

By reviewing substantive law, the court may determine what matters constitute material facts.  Anderson, supra.  "Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." Id. at 248.  A dispute about a material fact is "genuine" only if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." Id.  The court must credit factual disputes in favor of the party resisting summary judgment and draw inferences favorable to that party if the inferences are reasonable, however improbable they may seem. Cole v. Cole, 633 F.2d 1083, 1092 (4th Cir. 1980).  Affidavits filed in support of a Motion for Summary Judgment are to be used to determine whether issues of fact exist, not to decide the issues themselves.  United States ex rel. Jones v. Rundle, 453 F.2d 147 (3d Cir. 1971). When resolution of issues of fact depends upon a determination of credibility, summary judgment is improper.  Davis v. Zahradnick, 600 F.2d 458 (4th Cir. 1979).

In determining whether a genuine issue of material fact exists, the admissible evidence of the non-moving party must be believed and all justifiable inferences must be drawn in his or her favor.  Anderson, supra, at 255.  In the end, the question posed by a summary judgment motion is whether the evidence "is so one-sided that one party must prevail as a matter of law." Id., at 252.

### B. Title VII Failure to Promote Claim

#### 1. Applicable Standard

Plaintiff contends in her Complaint that race played a role in defendant's decision not to promote her to either supervisory position.  Plaintiff has presented no direct evidence of discrimination under Title VII ; thus, to survive summary judgment, plaintiff must establish a *prima facie* case of discrimination under a burden-shifting analysis.  If the plaintiff

establishes a *prima facie* case, the burden shifts to the employer to show that there were legitimate, non-discriminatory reasons for the employment decisions. If an employer satisfies that requirement, the burden then shifts back to the plaintiff to show that the employer's proffered reasons are false and a pretext to conceal intentional unlawful discrimination. McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

In a failure to promote case, to satisfy the burden of demonstrating a *prima facie* case of discrimination, plaintiff must show that:

> "(1) plaintiff is a member of a protected group; (2) plaintiff applied for the position in question; (3) plaintiff was qualified for the position; and (4) plaintiff was rejected for the position under circumstances giving rise to an inference of unlawful discrimination."

Carter v. Ball, 33 F.3d 450, 458 (4th Cir. 1994)( quoting McNairn v. Sullivan, 929 F.2d 974, 977 (4th Cir.1991)). More recently, the Court of Appeals for the Fourth Circuit held that "[t]o prevail on a disparate treatment claim for failure to promote, [a plaintiff] must establish that she was treated less favorably because of her race." Anderson v. Westinghouse Savannah River Co., 406 F.3d 248, 268 (4th Cir. 2005).

If the plaintiff establishes a *prima facie* case, the burden then shifts to the employer to show that there were legitimate, non-discriminatory reasons for the employment decisions it made. If an employer satisfies that requirement, the burden then shifts back to plaintiff to show that the employer's proffered reasons are false and a pretext to conceal intentional unlawful discrimination. McDonnell Douglas Corp. v. Green, supra.

## 2. Discussion

Plaintiff's failure to promote claim fails on the third element, a showing that she was qualified for either position. As discussed above, defendant had a written policy prohibiting entry level employees from being promoted during the first year of their employment.

Memorandum in Support, Ex. 3. Even if the court were to consider the Taylor affidavit and put such policy aside, plaintiff has not shown that she was as or more qualified than the successful candidate for the position that was actually filled as plaintiff had no supervisory experience and her job performance was average. Equally, it is undisputed that the successful candidate already had experience in the same job, had better qualifications, and was laterally transferred from another office. "In a failure to promote case, the plaintiff must establish that she was the better qualified candidate for the position sought." Evans v. Technologies Applications & Service, Co., 80 F.3d 954, 960 (4th Cir. 1994). Plaintiff has not presented any evidence which could satisfy such burden of proof.

Even if plaintiff had been able to establish a *prima facie* case, she has not rebutted the legitimate, non-discriminatory reasons given by defendant for not promoting her to either supervisory position. Defendant has shown that she was not eligible for promotion to either position, that a more qualified candidate with supervisory experience was laterally transferred to the position that was filled, and that the second supervisory position she applied for was never filled by any candidate. Plaintiff's own belief that she was more qualified than the successful candidate will not suffice, as "unsubstantiated allegations and bald assertions concerning her own qualifications and the shortcomings of her co-workers" are not enough for her claim to survive summary judgment. Id., at 959-60. Thus, plaintiff's failure to promote claims also fail as plaintiff has not presented admissible evidence that the legitimate, non-discriminatory reasons given by defendant are pretext for unlawful discrimination based on race.

### C. Title VII Retaliation Claim

As discussed in some detail above, plaintiff admits that her first complaint of racial bias occurred the same day she and more than a dozen others were laid off as part of a

reduction in force.  The court has concluded for purposes of this motion that plaintiff made her claim of racial bias immediately before the layoff was communicated. Plaintiff's contention appears to be that the decision maker in Colorado did not initially include plaintiff in the reduction in force and that he only added her name to the list when she complained immediately before he communicated the reduction in force decision, which had been made two days earlier. "'The test for proving prima facie retaliatory discharge requires that (1) plaintiff engaged in protected activity, such as filing an EEOC complaint, (2) the employer took adverse employment action against plaintiff, and (3) a causal connection existed between the protected activity and the adverse action.'" Causey v. Balog, 162 F.3d 795, 803 (4th Cir. 1998) (citation omitted).  "If the employer can then proffer a non-retaliatory reason for its action, [plaintiff] must show that the employer's proffered reason is pretextual." Baqir v. Principi, 434 F.3d 733, 747 (4th Cir. 2006).   Plaintiff has submitted no evidence that would support her theory.

For the purposes of argument, the court will assume that the first two elements are met.  As to the third element -- that a causal connection exists between the protected activity and the adverse action -- plaintiff must now come forward with some evidence that defendant took the adverse employment action because the plaintiff engaged in a protected activity. Even assuming that plaintiff complained in the minutes *preceding* communication of the reduction in force, plaintiff has presented no admissible evidence that Carlton, the sole decisionmaker, knew anything of her complaint either at the time the decision was made two days earlier or on the day such decision was communicated.  Despite having ample opportunity for discovery, the court has not been presented with any evidence that would either show or raise a reasonable inference that plaintiff was not on the original list.  Thus, to reach a result favorable to plaintiff, a jury would be called upon to speculate.  The case law

is clear in the Fourth Circuit that speculation and conjecture raise a mere possibility of discrimination rather than the reasonable probability which is necessary to support an inference of discrimination. Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 241-42 (4th Cir. 1982). Speculative assertions that a defendant's motivation was unlawful is not enough to withstand summary judgment, Goldberg v. B. Green and Co., 836 F.2d 845, 848 (4th Cir. 1988), and conclusory statements will not satisfy plaintiff's burden in responding to the motion for summary judgment. Pocahontas Supreme Coal Co. v. Bethlehem Steel Corp., 828 F.2d 211 (4th Cir. 1987). Unsupported allegations "do not confer talismanic immunity from Rule 56." Ross v. Communications Satellite Corp., 759 F.2d 355, at 365 (4th Cir. 1985). More specifically, the Fourth Circuit in several cases has consistently held that feelings or perceptions of discrimination by the employee are irrelevant:

> we have repeatedly explained that "'[i]t is the perception of the decision maker which is relevant,' not the self-assessment of the plaintiff." Accordingly, the plaintiff's "perception of [her]self . . . is not relevant." Similarly, that plaintiff's coworkers may have thought that [she] did a good job, or that [she] did not 'deserve' [to be discharged], is close to irrelevant."

DeJarnette v. Corning Incorporated, 133 F.3d 293 (4th Cir. 1998)(citations and quotations omitted).

The court has also considered the timing of events and resolved any timing issue in a manner most favorable to plaintiff. While close temporal proximity between the first two elements has been held to satisfy the third element, see Carter v. Ball, 33 F.3d at 470 (five months), Williams v. Cerberonics, Inc., 871 F.2d 452 (4th Cir. 1989) (four months), and there is certainly close temporal proximity between the claim of bias and the announcement of the decision to include plaintiff in the layoff, there is no evidence that the sole decision maker in Colorado had any knowledge that plaintiff had, perhaps minutes before his decision was communicated, made an internal charge of discrimination. More importantly, there is no

evidence that the decision maker knew of the yet-to-be-filed charge when the decision was made two days earlier. Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 656-57 (4th Cir. 1998)("an employer cannot take action because of a factor of which it is unaware...."). As a result, no evidence of a causal connection exists between the internal charge and inclusion of plaintiff in the August 2008 reduction in force. Summary judgment will, therefore, be granted in favor of defendant on plaintiff's retaliation claim.

### D. Supplemental Claims

For the reasons discussed earlier, the court will also dismiss the supplemental state law claims with prejudice as plaintiff has indicated that such claims have been withdrawn. Further, review of the response to the Motion for Summary Judgment indicates that plaintiff has not substantively responded to the Motion for Summary Judgment as to such claims. As such, they have been abandoned and inasmuch as plaintiff has had a full opportunity to prosecute such claims, the dismissal will be with prejudice. Fed.R.Civ.P. 41.

### ORDER

**IT IS, THEREFORE, ORDERED** that defendant's Motion for Summary Judgment (#19) is **GRANTED**, the supplemental state-law claims are **DISMISSED** with prejudice as abandoned, and **SUMMARY JUDGMENT** is entered in favor of defendant and against plaintiff providing that the Title VII claims for failure to promote and retaliation are **DISMISSED** with prejudice**.**


The Clerk of this Court is respectfully instructed to enter Judgment consistent with this Memorandum of Decision and Order.

Signed: June 15, 2011

Max O. Cogburn Jr.
United States District Judge